**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ALFRED J. WADE, }<br>   *Plaintiff* }<br>v. }<br>            }<br>HEWLETT-PACKARD DEVELOPMENT }<br>COMPANY L.P. SHORT TERM }<br>DISABILITY PLAN F/K/A COMPAQ }<br>COMPUTER INTERNATIONAL }<br>CORPORATION SHORT TERM **}**<br>DISABILITY PLAN. }<br>   *Defendant* | CIVIL ACTION NO. H-04-3532 |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the court in this ERISA case are cross motions for summary judgment (Docs. 19 &20) and Plaintiff's motion to strike (Doc. 33). For the following reasons, the court ORDERS that Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED. Plaintiff's motion to strike is MOOT.

### II. RELEVANT FACTS

Plaintiff Alfred J. Wade ("Wade") began working for Compaq in 1988. In August 2000, he sought treatment from Dr. Mary Ann Ty, a psychiatrist. Wade complained of feeling "out of control at [his] employment," "overwhelmed" and "want[ed] [the] assessment of [the] possibility of meds." See, Psychiatric Assessment of Dr. Mary Ann Ty, Bates No. 001164. Dr. Ty found symptoms of depression, anxiety and Attention Deficit Hyperactivity Disorder. *Id.* Depression was indicated by mild hypersomnia, moderate weight gain, moderate decrease in energy, mild guilt feelings, moderate isolates, moderate loss of interest in enjoyed activities, moderate difficulty with concentration, mild difficulties with memory, severe feelings of being overwhelmed, mild feelings of hopelessness/helplessness, mild sensitivity, mild feelings of worthlessness/inadequacy, moderate irritability and moderate workplace "mood swings." Anxiety was indicated by mild "butterflies

in stomach." Attention Deficit Hyperactivity Disorder was indicated by moderate to severe attention deficits, mild hot-temper outbursts, moderate emotional over activity and moderate disorganization. Notwithstanding these observations, Dr. Ty noted that Wade was "bright, pleasant [and] easily engaged with counselor." *Id.* at 001170. She also found his ability to make decisions about daily living, relationships and other major issues was good. *Id.* at 001172. She prescribed an anti-depressant and Ritalin.

After seeing Dr. Ty, Wade requested short term disability benefits ("STD benefits") under the Compaq Computer Corporation Short-term Disability Plan ("the plan"). The plan defines disability in the following way:

> "Disabled" or "Disability" means for the first 26 continuous weeks of absence from work beginning with the first full day of absence, a medical condition (or having such a condition, as the case may be) determined by the Plan Administrator to be one which is continuous and prevents the Employee from performing each of the material duties of his or her regular occupation. The Employee (1) must also be under the regular care of a physician appropriate to the medical condition and (2) cannot be working at any job for wage or profit in order to be Disabled or considered to have a Disability, except when such job is for his Employer or within the terms of Rehabilitative Employment pursuant to Section 3.9.

Compaq Computer Corporation Short-term Disability Plan, Art. I (Definitions and Construction) 1.1. Definitions. ValueOptions, the disability care management service company used by Compaq, reviewed Wade's claim. Its Clinical Criteria specify that to be certified for STD benefits a claimant must show that:

- A. Employee meets client specific administrative criteria for admission to the program.
- B. Disability care manager reviews the assessment and/or any information provided by the current treaters for internal consistency.
- C. Demonstrable signs, symptoms, and psychological finding must support an AXIS 1 DSM-IV diagnosis resulting in documented mental impairment.
- D. The mental impairment must be severe enough to cause functional limitations (overall marked to severe scores on the FCA page of the assessment).
- E. The functional limitations are substantial enough to cause limitations in substantial employment activity as stated by the plan.

Review of denial of short-term disability, Bates No. 001274.  ValueOptions required Wade to undergo a Psychiatric and Functional Assessment with one of its psychologists, Dr. Uzzell.  The Functional Capacity Assessment (FCA), sub-point D above, revealed only a moderate impairment in 3 of 10 areas, Bates No. 001180.   Dr. Uzell concluded that Wade was "currently able to function occupationally." Dr. Webster, a ValueOptions psychiatrist, reviewed Dr. Uzell's findings and agreed.  Wade's claim was denied.

Wade appealed the denial of his claim to the ValueOptions Appeals Committee.  The committee, including Dr. Webster, reviewed all the information and upheld the denial. It specifically noted the effectiveness of the drugs prescribed and Wade's physicians agreement that his FCA was within normal limits. Case Notes, HP 00536.

Wade appealed the committee's ruling to Compaq's Welfare Benefits Administrative Committee (WBAC).  WBAC conducted its own investigation.  It compiled documents related to the case, attempted to contact Wade's doctors and sought an outside opinion from Dr. Conway McDanald.  Dr. McDanald's opinion letter, although referenced in Compaq's final determination letter, was not produced during the discovery period.[1]  During the appeal, Compaq reviewed the procedures used by ValueOptions and questioned some of its methods. Compaq was concerned with ValueOptions's ability to gauge an individual's mental state post hoc.  It was also concerned about doctors serving as initial claims reviewers and appeal committee members. WBAC resolved these issues to its satisfaction and issued its decision.  It denied Wade's claim based on its determination that "the medical documentation in this case did not substantiate a condition of such severity that it prevented you from performing the essential duties of your occupation."  *See* Final Determination Letter, Bates No. 001276.

### III. APPLICABLE LEGAL STANDARDS

#### A.  Summary Judgment

---

[1] Dr. McDanald's opinion letter is the subject of Plaintiff's motion to strike, the merits of which are rendered moot by this order.

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson*, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be

4

granted." *Id.*, 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

### B. ERISA

Where, as here, the parties agree the benefit plan grants the plan administrator discretion to construe the plan's terms or to make eligibility determinations, courts apply the abuse of discretion standard of review and analyze whether the administrator acted arbitrarily or capriciously. *Gosselink v. American Tel. & Tel. Inc.*, 272 F.3d 722, 726 (5th Cir. 2001).

The Fifth Circuit applies a two-step analysis to determine whether a plan administrator's construction of the plan's terms is an "abuse of discretion." *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998); *see also Gosselink*, 272 F.3d at 726. First, the court determines whether the plan administrator's interpretation is legally correct. *Tolson*, 141 F.3d at 608. If it is, the inquiry is over. *Id.* Whether an administrator's interpretation of a plan is legally correct

depends on: (i) whether the administrator has given the plan a uniform construction; (ii) whether the interpretation is consistent with a fair reading of the plan; and (iii) any unanticipated costs resulting from different interpretations of the plan. *Gosselink*, 272 F.3d at 726. If the plan administrator's interpretation of the plan is not legally correct, then the court decides whether it was an abuse of discretion. *Id*. Courts consider three non-exclusive factors that are not necessarily applicable to every case: (i) the internal consistency of the plan under the administrator's interpretation; (ii) any relevant regulations formulated by the appropriate administrative agencies; and (iii) the factual background of the determination and any inferences of bad faith. *See Gosselink*, 272 F.3d at 726-727. The existence of a conflict of interest "is a factor to be considered in determining whether the administrator abused its discretion in denying a claim." *Vega v. National Life Ins. Svcs.*, 188 F.3d 287, 297 (5th Cir. 1999) (en banc). The greater the evidence of conflict on the part of the administrator, the less deferential the abuse of discretion standard will be. *Id.*

The plan administrator's factual determinations are also reviewed for abuse of discretion. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 597 (5th Cir. 1994). To be overturned, a benefit eligibility determination must be arbitrary, capricious (*Wildbur v. Arco Chemical Co.*, 974 F.2d 631 (5th Cir. 1992)), and supported by no rational basis in the administrative record. *Vega* at 289. "A district court should evaluate the administrator's fact findings regarding the eligibility of a claimant based on the evidence before the administrator." *Wildbur*, 974 F.2d at 639.

### IV. APPLICATION OF THE LAW TO THE FACTS

The court finds that Compaq's denial of Wade's STD claim was not an abuse of discretion. Compaq relied on the medical reports of several doctors, including Plaintiff's own psychiatrist, in reaching its determination. Additionally, the criteria Compaq used to gauge whether Wade was disabled is consistent with the policy language.

Wade's claim that Compaq abused its discretion by relying on the alleged hearsay evidence of Dr. McDanald confuses an eligibility decision with a court proceeding. ERISA does

not require Compaq to base eligibility decisions on sworn testimony subject to cross examination. If the Plan Administrator bases its determination on a statement, the identity of the person making the statement, his or her reliability and the context in which the statement was made are all relevant factors for the reviewing court to consider. *See, Pierre v. Connecticut General Life Insurance Company/Life Ins. Co. of North America,* 932 F.2d 1552 (5th Cir. 1991). Here, even giving Dr. McDanald's opinion no weight, Dr. Uzzell's and Dr. Webster's opinions supply a rational basis for denying the claim.

Wade contends Compaq abused its discretion by applying the wrong definition of disability. To be certified for STD leave Compaq requires that, "the functional limitations [psychoses] are substantial enough to cause limitations in substantial employment activity . . ." Wade contends this interpretation conflicts with Art. I of the plan, which defines disability as a condition that "prevents the Employee from performing each of the material duties of his or her regular occupation." The court disagrees. Compaq's interpretation comports with the policy's language and is not an abuse of discretion.

## V. CONCLUSION

For the aforementioned reasons, Plaintiff Alfred J. Wade's motion for summary judgment (Doc. 20) is DENIED. Defendant Compaq Computer Corporation Short-Term Disability Plan's motion for summary judgment (Doc. 19) is GRANTED.

**SIGNED** at Houston, Texas, this 8th day of November, 2005.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE